IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| WAYNE V. JASKE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) No. 03 C 2939 |
| | ) |
| ZIMMER, INC., | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff William Jaske brought this action against defendant Zimmer, Inc. for strict products liability and negligence related to the failure of his prosthetic knee. Before the court are defendant's motions to bar the testimony of three of plaintiff's experts, Donald E. Duvall, Ph.D., Riad Gobran, Ph.D., and Lawrence D. Weis, M.D., and to strike the affidavit of another of plaintiff's experts, Lyle R. Jacobs. Also before the court is plaintiff's motion to exclude the supplemental report of defendant's expert, Albert W. Burstein, Ph.D. For the reasons stated below, we grant defendant's motions to exclude the testimony of Duvall and Gobran. We deny its motion to exclude Weis' testimony, and grant its motion to strike Jacob's affidavit. We grant plaintiff's motion to exclude the supplemental report of Burstein.

## BACKGROUND

In 1995, plaintiff had his left knee replaced to alleviate recurring pain. His surgeon implanted a Miller Galante II ("MG II") artificial knee that was manufactured by defendant. The implant functioned normally until around the beginning of 2002, when plaintiff began to experience activity-related knee pain. His surgeon ran tests and informed plaintiff that the

tibial components of the MG II were probably loose.[1] To correct the problem, plaintiff underwent implant replacement surgery in June 2002. At this time his surgeon discovered that the tibial base plate of the MG II was loose and had fractured. Plaintiff claims that either a manufacturing or design defect in the plastic tibial articulating surface ("TAS")[2] caused the tibial base plate to fracture.

## DISCUSSION

### Expert Testimony

"The admissibility of scientific expert testimony is governed by Federal Rule of Evidence 702, and in particular Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993)." Fuesting v. Zimmer, Inc., 421 F.3d 528, 534 (7th Cir. 2005). Rule 702 states:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Under Daubert, the court's role is that of a gatekeeper, to "ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." 509 U.S. at 589. Thus, before we even consider whether the testimony "will assist the trier of fact to understand or determine a fact at issue," we must make "a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid." Id. at 592-93. To determine

---

[1] Total knee replacement involves the replacement of three bone surfaces with artificial components: the lower end of the femur (thigh bone); the top surface of the tibia (shin bone); and the back surface of the patella (knee cap). The MG II system consists of a metal femoral replacement component, a metal tibial base plate attached to a plastic tibial articular surface that covers the tibia, and a dome-shaped patellar component.

[2] Specifically, the TAS is made from ultra high molecular weight polyethylene ("UHMWPE").

the reliability of scientific evidence, we consider "whether the expert is qualified in the relevant field and whether the methodology underlying the expert's conclusions is reliable." Zelinski v. Columbia 300, Inc., 335 F.3d 633, 640 (7th Cir. 2003).

An expert may be qualified by "knowledge, skill, experience, training, or education." Fed. R. Evid. 702. While "extensive academic and practical expertise" in an area may suffice to qualify a potential witness as an expert, Bryant v. City of Chicago, 200 F.3d 1092, 1098 (7th Cir. 2000), "Rule 702 specifically contemplates the admission of testimony by experts whose knowledge is based on experience." Walker v. Soo Line R.R. Co., 208 F.3d 581, 591 (7th Cir. 2000) (*citing* Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 148-49 (1999)). We consider a proposed expert's full range of practical experience, as well as academic or technical training, when determining whether that expert is qualified to render an opinion in a given area. Smith v. Ford Motor Co., 215 F.3d at 718 (7th Cir. 2000).

We evaluate the underlying methodology by examining whether it (1) has been tested, (2) has been subjected to peer review and publication, (3) has a potential or known rate of error, and (4) has been accepted by the relevant professional community. Daubert, 509 U.S. at 593-94. In addition to the factors listed above, the 2000 Advisory Committee's Notes to Rule 702 suggest other factors, including:

> (5) whether "maintenance standards and controls" exist; (6) whether the testimony relates to "matters growing naturally and directly out of research they have conducted independent of the litigation," or developed "expressly for purposes of testifying"; (7) "[w]hether the expert has unjustifiably extrapolated from an accepted premise to an unfounded conclusion"; (8) "[w]hether the expert has adequately accounted for obvious alternative explanations"; (9) "[w]hether the expert is being as careful as he would be in his regular professional work outside his paid litigation consulting"; and (10) "[w]hether the field of expertise claimed by the expert is known to reach reliable results for the type of opinion the expert would give."

Fuesting, 421 F.3d at 534-35. The factors are non-exclusive and the analysis is flexible: "Its

overarching subject is the scientific validity and thus the evidentiary relevance and reliability – of the principles that underlie a proposed submission. The focus, of course, must be solely on principles and methodology, not on the conclusions that they generate." Daubert, 509 U.S. at 594-95.

### Experts Duvall and Gobran

Defendant argues that Duvall and Gobran are not qualified to offer any opinions about the MG II in this case because they have no experience in biomechanics or orthopedics. Plaintiff responds that Duvall and Gobran's opinions relate only to polymer science, an area in which both have extensive experience. Specifically, both Duvall and Gobran will testify to the oxidized state of the TAS when it was removed from plaintiff and also opine on the likely cause of the oxidation – the degenerative effects of oxidation on the TAS.

Duvall is a professional engineer specializing in the science of polymer materials, including UHMPWE, and has over 32 years of experience. He holds a B.S. in Chemistry, an M.S. in Materials Science and Engineering, and a Ph.D. in Metallurgical and Materials Engineering. He is widely published, including several articles on the causes of failure in various polyethylene products. While we recognize that Duvall's experience is predominantly in polyethylene pipes rather than medical devices made from polyethylene, we agree with plaintiff that the similarity in chemical and physical properties between the two provide Duvall with sufficient relevant experience to qualify him to deliver his proposed testimony.

Gobran is a professionally trained materials scientist and engineer. He holds a B.S. in Faculty of Science and a Ph.D. in Polymer Chemistry. He is also widely published in the area of polymer science, including articles on polymer oxidation and oxidative degradation. As with Duvall, we recognize that Gobran's experience is not with medical devices made from

polyethylene, but we hold that his extensive experience qualifies him to deliver the proposed testimony.

We turn now to examine the methodology Duvall and Gobran used in arriving at their opinions. Duvall performed a Fourier Transform Infrared Spectroscopy ("FTIR") on the MG II that was removed from plaintiff. We accept that this is the industry standard method for evaluating oxidation in UHMWPE. *See* Crosslinked and Thermally Treated Ultra-High Molecular Weight Polyethylene for Joint Replacements. But we share defendant's concerns that this test is unreliable because it was not performed until approximately four years after the MG II was removed from plaintiff. Defendant contends that oxidation of the UHMWPE could have occurred during the intervening period and post-surgery sterilization methods could have affected the level of oxidation. Further, defendant argues that the results of the test will be skewed as a result of lipids and proteins that permeated into the polyethylene during the original implantation surgery. Plaintiff responds that the rate of oxidation after removal is negligible and that the test results distinguish oxidation caused by exposure to bodily fluids form oxidation caused by gamma irradiation. However, as support for these assertions plaintiff relies solely on the deposition testimony of Duvall. *See* Resp. at 11 ("Dr. Duvall's professional opinion is that 'the rate of oxidation after explantation is effectively zero and not measurable.'") While we are comfortable that the FTIR test is a reliable method to test present levels of oxidation in UHMWPE, the test results do not determine when that oxidation took place or what level of oxidation existed when the MG II was removed from plaintiff, and plaintiff has provided no empirical support or indication of the public acceptance for Duvall's assertion. It is possible that plaintiff will be able to supplement his filing and alleviate our concerns, but at this juncture he has failed to "bridge the analytical gap" between the data and

Duvall's proffered opinion. Because the proposed testimony of Duvall is based entirely on the FTIR test, we must exclude it at this point. Similarly, because Gobran's proposed testimony is based on the same FTIR test (see Resp. at 14-15: "Dr. Gobran's opinion is based on the FTIR analysis performed by Dr. Duvall, and his visual examination plays at most a peripheral role in his analysis"), we exclude it as well.

### Expert Weis

Defendant argues that Weis is not qualified to offer expert testimony on the cause of the tibial base plate's fracture and that his opinions are not reliable because they are nothing more than bare conclusions. Plaintiff responds that Weis will not testify as to the cause of the fracture. Instead, he will testify about plaintiff's physical condition at the time the MG II failed, the range of complications that can occur among patients who receive knee implants like the MG II, and the frequency with which knee implants may suffer the type of failure experienced by plaintiff.

Weis is a board certified orthopedic surgeon. He is currently Chief of Orthopedics at the Veterans Administration Hospital in West Haven, Connecticut, and a Clinical Assistant Professor of Orthopedics at Yale University. During his career, he has performed over 500 total knee replacement surgeries. We find that he is qualified to deliver testimony regarding knee replacements.

It appears from the submissions that plaintiff will have Weis present evidence that falls into two categories. The first is plaintiff's condition at the time the MG II failed and his opinion as to how this condition may or may not have affected the MG II. For this opinion, Weis relies primarily on his examination of plaintiff's medical records. This is acceptable methodology for medical experts and the testimony will be allowed. *See* <u>Walker</u>, 208 F.3d at

591. Plaintiff also indicates that Weis will testify that the fracture of the tibial base plate is highly unusual and unexpected. Although not subject to formal testing, we will allow Weis to offer this opinion because his expertise and considerable practical experience in knee replacement surgery render it reliable. *See* Kumho, 526 U.S. at 150 (holding that the Daubert inquiry is flexible and "depends upon the particular circumstances of the particular case at issue"); Fed. R. Evid. 702 advisory committee's note (explaining that one relevant factor to consider is "whether the field of expertise claimed by the expert is known to reach reliable results for the type of opinion the expert would give"). We also hold that the testimony as to whether the fracture of the tibial base plate is unusual or unexpected is relevant to the issue of the cause of the fracture, and whether such fractures can generally be expected. Accordingly, the motion to exclude the testimony of Dr. Weis is denied.

Expert Burstein

Plaintiff seeks to exclude the supplemental report of defendant's expert, Albert Burstein, dated July 19, 2007. The report was submitted in response to the reports of plaintiff's experts Duvall and Gobran, and questions the opinions of those experts. In forming his own opinions for the supplemental reports, Burstein relies on the deposition testimony of Duvall and Gobran, their expert reports, and the results of the FTIR. Because that testimony has been excluded, the supplemental report is also excluded.[3]

Motion to Strike

Defendant moves to strike the September 5, 2007, affidavit of plaintiff's expert, Lyle R. Jacobs, because it contains opinions that are inconsistent with his earlier sworn deposition

---

[3] Defendant submitted Burstein's supplemental report as part of its motion to exclude the testimony of Duvall and Gobran. For the sake of completeness, we note that we did not rely on the supplemental report in excluding plaintiff's proposed expert testimony. Defendant's motion to exclude raised valid, common sense questions about the FTIR report, even without considering the details of Burstein's supplement report.

testimony and expert report. Defendant further argues that the late disclosure of these new opinions prejudices defendant because it decided not to seek exclusion of Jacobs' opinion, based on his earlier opinions, but had it known that Jacobs would eventually alter his opinion, it would have sought exclusion. We agree that the affidavit should not be allowed, but for a different reason.

Jacobs first issued an opinion in this matter in September 2002. That report, based on his examination of the MG II removed from plaintiff, concludes that the MG II fractured "by fatigue." Jacobs' deposition testimony reiterates this opinion. On September 5, 2007, Jacobs executed an affidavit opining that the tibia base plate in plaintiff's MG II "fractured as a result of repeated tensile stresses applied to the plate over a period of time, causing sufficient weakening and eventual fracturing of the device by a metallurgical mechanism known as fatigue," and ruling out other causes such as bone resorption. Jacobs bases this modification of his earlier opinion on a review of Duvall's report and the FTIR test results. Because we have excluded the opinion of Duvall, Jacobs' September 5, 2007, affidavit is excluded as well.

## CONCLUSION

For the reasons stated above, the opinions of Duvall and Gobran are excluded. Weis is permitted to testify regarding plaintiff's medical condition at the time the MG II failed, and his opinion as to whether the failure was usual or expected is allowed. The July 19, 2007, supplemental report of Burstein is excluded. The September 5, 2007, affidavit of Jacobs is excluded.

JAMES B. MORAN
Senior Judge, U. S. District Court

March 19, 2008.